**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **C.K.,** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:25-cv-01162-MMH-PDB |
| | : | |
| **WYNDHAM HOTELS & RESORTS, INC. d/b/a** | : | JURY TRIAL DEMANDED |
| **SUPER 8 BY WYNDHAM,** | | |
| **SUPER 8 WORLDWIDE, INC.,** | | |
| **MIRAJ III LLC d/b/a SUPER 8 MOTEL** | | |
| | : | |
| Defendant(s) | : | |

**FIRST AMENDED COMPLAINT**

AND NOW, comes the Plaintiff, **C.K.**, by Andreozzi + Foote, who files this Complaint against the Defendants, **WYNDHAM HOTELS & RESORTS, INC. d/b/a SUPER 8 BY WYNDHAM, SUPER 8 WORLDWIDE, INC., MIRAJ III, LLC d/b/a SUPER 8 MOTEL,** and in support thereof, states as follows:

**INTRODUCTION**

1.    This action for damages is brought by Plaintiff, survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2.    Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3.    Plaintiff meets the definition of a sex trafficking victim, induced by force, fraud, and coercion by a Traffickers to engage in commercial sex at the subject hotel, by being

Page **1** of **19**

psychologically and physically prohibited from escape by a Traffickers, or alternatively, was a minor at the time of the trafficking.

4. The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5. Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

## PARTIES

6. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff name and address is not contained herein protect the safety, privacy and identity of sex trafficked victim(s). Nationwide similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

7. Plaintiff is currently a resident of Nebraska.

8. Plaintiff was born in 1991.

9. At all times relevant and material, Defendant Wyndham Hotels & Resorts, Inc. is a Delaware corporation with its principal place of business at 22 Sylvan Way, Parsippany, NJ 07054.

10. Defendant Wyndham Hotels & Resorts, Inc. was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Super 8 by Wyndham, during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

11.    At all times relevant and material, Defendant Super 8 Worldwide, Inc. is a Delaware corporation with its principal place of business at 22 Sylvan Way, Parsippany, NJ 07054.

12.    Defendant Super 8, Worldwide, Inc. is a subsidiary of Wyndham Hotels & Resorts, Inc.

13.    Defendant Super 8 Worldwide, Inc. was a hotel owner, hotel operator, manager, and/or supervisor of the subject premises and subject hotel, doing business as Super 8 Worldwide, Inc., during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

14.    At all times relevant and material, Defendant Miraj III, LLC is a limited liability company headquartered at 5018 University Boulevard West, Jacksonville, FL 32216.

15.    Defendant Miraj III, LLC was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Super 8 Motel, during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

16.    Defendant Miraj III, LLC acted as a Franchisee and not a Franchisor for the subject aforesaid premises.

### JURISDICTION AND VENUE

17.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the

judicial district where this action was brought, and Defendant(s) conducts business within this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

19.    As it pertains to the subject Defendants, Plaintiff was sex trafficked at Super 8, now Surestay by Best Western, located at 5018 University Boulevard W in Jacksonville, FL 32216, owned, operated, and/or managed by Defendants, by her trafficker, in or about May 2017 and through and inclusive of June 2017.

20.    Plaintiff was forced by her Traffickers to book the room in the subject hotel.

21.    While Plaintiff checked into the subject hotel, Plaintiff's Traffickers stood over her shoulder to ensure her compliance.

22.    Plaintiff was dressed in provocative clothing during check in time.

23.    Plaintiff showed signs of declining health and hygiene.

24.    Prior to coming to the subject hotel, Plaintiff's Traffickers burned a visible brand into the back of her neck.

25.    While trafficked at the subject hotel, Plaintiff was forced to have sex with numerous sex buyers.

26.    The money paid by the sex buyers went to Plaintiff's Traffickers.

27.    The large amount of sex buyers generated significant foot traffic in and out of Plaintiff's room at the subject hotel.

28.    While staying at the hotel, Plaintiff was forced to walk around the parking lot and surrounding areas dressed in provocative clothing to attract more sex buyers.

29.    Plaintiff's Traffickers forced Plaintiff to ingest narcotics to keep her compliant.

30.     During the Plaintiff's stay at the subject hotel, Plaintiff made multiple requests for extra towels.

31.     Housekeeping staff came into Plaintiff's room during her stay at the subject hotel.

32.     Plaintiff's room had numerous condoms, condom wrappers, and drug paraphernalia in the room when housekeeping entered the room.

33.     Plaintiff encountered an employee of the subject hotel, outside of her hotel room and attempted to indicate to the employee that she needed help, but the employee did not help her.

34.     Plaintiff escaped to the hotel lobby to attempt to get help from the staff at the front desk.

35.     Hotel staff did not provide Plaintiff with help or call police for help.

36.     When staff did not help, Plaintiff screamed and threw objects around to get their attention, but staff continued to ignore her.

37.     Hotel staff did discuss the incident with Plaintiff's Traffickers.

38.     Plaintiff was subsequently able to escape her Traffickers and the subject hotel by fleeing to another hotel that provided her with help.

39.     Sex trafficking occurred at this subject hotel, upon information and belief, prior to Plaintiff's trafficking, Defendant(s) knew or should have known that Plaintiff was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

40.     As a hotel owner and hotel operator, Defendant(s) controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

41.     A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

42.    The hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[1] The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

43.    In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

44.    Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early

---

[1] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3 /.

[2] *Global Report on Trafficking in Persons,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and analysis/tip/2021/GLOTiP_2020_15jan_web.pdf /. See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html /.

[3] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[4] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry /; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf /.

as 1997 with the United Nations Blue Heart Campaign[5] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[6]

45.    These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

46.    The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant(s) on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

47.    Years before Plaintiff was trafficked, Defendant(s) knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

48.    By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

49.    Before and during the relevant period, Defendant(s) failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

---

[5] *The Blue Heart Campaign,* UNITED NATIONS (2022), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime /.
[6] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone /.

50.     Due to the involvement and affirmative actions of Defendant(s) (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiff by her Traffickers on Defendant(s)'s premises in violation of the TVPRA, including, but not confined to, by:

    a. Defendant(s) repeatedly rented rooms to Plaintiff's Traffickers when Defendant(s) knew or should have known said Traffickers were engaged in sex trafficking on Defendant(s)'s premises including as to Plaintiff in violation of the TVPRA;

    b. Defendant(s) associating with Plaintiff's Traffickers in an effort to force her to serve their business objective;

    c. Defendant(s) allowing commercial dealings with the aforesaid Traffickers (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

    d. Defendant(s)'s staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the Traffickers so as to alert the aforesaid Traffickers of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

    e. Defendant(s) actively advancing the sex trafficking operation of Plaintiff's Traffickers by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiff; and,

    f. Defendant(s) were otherwise being actively involved and affirmatively enabling Plaintiff's Traffickers and facilitating the venture's success, Plaintiff was caused to be sex trafficked by her Traffickers on Defendant(s)'s premises in violation of the TVPRA.

51.     Before and during the relevant period, Defendant(s) failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

52.     Defendant(s) failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotel including as to Plaintiff herein and in violation of the TVPRA.

53.     Had the Defendant(s) timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel would have been prevented or mitigated.

54.     Due to the failure of Defendant(s) to timely and properly implement anti-trafficking policies and practices, Plaintiff was repeatedly victimized and trafficked for sex on Defendant(s)'s premises in violation of the TVPRA.

55.     Defendant(s) by its passive or active involvement and affirmative enabling of the subject trafficking was a proximate and competent cause and substantial factor in causing P Plaintiff severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiff severe injury.

56.     Because of the foregoing conduct of Defendant(s), the Plaintiff suffered severe and permanent injuries and damages, as outlined herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

57.     Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendant(s).

58.     At all relevant times, Plaintiff was involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex.

59.     Plaintiff is a "victim" of sex trafficking as protected under applicable provisions

of the TVPRA.

60.    As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotel owned and operated by Defendant(s).

61.    Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

62.    Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

63.    More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the trafficker(s) who directly violated § 1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker(s) who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil Defendant(s) who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendant(s).

64.    In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, Traffickers used various means to do so including but not limited to (a) Traffickers utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant(s)'s staff; (b) Traffickers instilled in Plaintiff the fear of severe bodily injury and/or fear of death if Traffickers' directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the Traffickers of Plaintiff to induce sex with sex buyers at the subject hotel.

65.     Defendant(s) knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her Traffickers (or at the direction of her Traffickers) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

66.     Defendant(s) rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

67.     The rental of a hotel room constitutes a financial benefit from a relationship with the Traffickers sufficient to meet "financially benefitted" element of the §1595(a) standard.

68.     Plaintiff's Traffickers took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

69.     In addition, Defendant(s) received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her Traffickers online) and from such Wi-Fi service Defendant(s), upon information and belief, received financial benefit.

70.     Defendant(s) participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant(s), knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

71.     During the time Plaintiff was trafficked at the subject hotel, Plaintiff's Traffickers had direct interaction with employee(s) and staff of Defendant(s) by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendant(s) to act as lookout(s)/informant(s) for Plaintiff's Traffickers, while acting in their scope of employment, so as to inform the Traffickers of police activity or other similar type alerts.

72.    In this case, during the relevant period alleged herein, Defendant(s) took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's Traffickers that violated the TVPRA.

73.    Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

74.    Defendant(s) operating the subject hotel and renting out rooms to Plaintiff's Traffickers was an enterprise involving risk and potential profit.

75.    Defendant(s) operating the subject hotel and renting out rooms to Plaintiff's Traffickers was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

76.    By renting rooms to Plaintiff and Plaintiff's traffickers Defendant(s), the hotel owner and operator, was associating with Plaintiff's Traffickers in an effort to force Plaintiff to serve their business objective.

77.    The modus operandi of the Traffickers was to renew the room(s) rental daily.

78.    A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's Traffickers, in part, in that the hotel repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

79.    Plaintiff's Traffickers had prior commercial dealings with the subject hotel which the Traffickers and Defendant(s) wished to reinstate for profit when Plaintiff's Traffickers repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

80.    This Defendant(s) had constructive and actual knowledge that the undertaking or

enterprise violated the TVPRA as to the Plaintiff.

81.     Defendant(s) knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

(a) constant foot traffic of sex buyers to the Traffickers' rented room(s) to have sex with trafficked victim(s);

(b) trafficked victim(s) would walk around hotel grounds drug and/or alcohol impaired, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, and in sexually explicit clothing;

(c) suspicious individuals loitering outside the hotel room(s) when a sex buyer would enter a room(s);

(d)  inside the hotel room(s) rented by the Traffickers (or at the direction of the Traffickers) there was a suspicious bunch of people and suspicious items including cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

(e) Traffickers monitoring hotel hallway, door of room(s) and walking hotel perimeter;

(f) Traffickers shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff;

(g) Plaintiff soliciting for sex buyers on the hotel premises at the direction of her Traffickers,

(h) Plaintiff's room exhibited signs of commercial sex work,

(i) loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

(j) Traffickers utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant(s)'s staff

(k) overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel in view and/or earshot of staff of Defendant(s), (4) Traffickers overtly asserting control over Plaintiff in common areas of the hotel in view and/or earshot of staff of Defendant(s) (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room

and (l) other commonly known sex trafficking red flags which the above captioned Defendant(s) knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

82.     Defendant(s)'s staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

83.     When being trafficked at the subject hotel, Plaintiff interacted with Defendant(s)'s

staff, and Defendant(s)'s staff witnessed and observed Plaintiff, Traffickers as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

84.     Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

85.     Defendant(s) was involved and affirmatively took actions as the hotel owner and operator on Defendant(s)'s subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendant(s) repeatedly renting rooms to Plaintiff's Traffickers when Defendant(s) knew or should have known said Traffickers was engaged in sex trafficking on Defendant(s)'s premises including as to Plaintiff in violation of the TVPRA, (b) Defendant(s) associating with Plaintiff's Traffickers in an effort to force her to serve their business objective, (c) Defendant(s) allowing commercial dealings with the aforesaid Traffickers to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendant(s) acting as lookouts and informants, while in the scope of their employment, for the benefit of the Traffickers so as to alert the aforesaid Traffickers of police activity or similar type warning alerts, (e) Defendant(s) knowingly facilitating and/or negligently facilitating the Traffickers's activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's Traffickers and facilitating their venture's success.

86.     Defendant(s)'s failure, by its agents, servants, staff, and employees, to timely and

properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

87.     This Defendant(s), during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

88.     Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

89.     As a direct and proximate result of Defendant(s)'s involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant(s)'s hotel in violation of the TVPRA.

90.     Because of being sex trafficked at the subject hotel, Plaintiff suffered and will

continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

### JURY TRIAL DEMAND

Plaintiff hereby demand a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant(s) as identified in the above-referenced Count and as follows:

a) All available compensatory damages for the described losses with respect to  the above cause of action;
b) Past and future emotional distress;
c) Consequential and/or special damages;
d) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;
e) Disgorgement of profits obtained through unjust enrichment;
f) Restitution;
g) All damages allowable under the TVPRA;
h) Reasonable and recoverable attorney's fees;
i) Punitive damages with respect to each cause of action;
j) Costs of this action; and
k) Pre-judgement and all other interest recoverable

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Respectfully Submitted,

DATE: January 23, 2026

/s/ J. Alexander Marcinko
J. Alexander Marcinko, Esq.
Ashley Ventrillo, Esq.
Florida Bar No. 1065524
ashley@vca.law
Nathaniel L. Foote, Esq.
(CPF# 2402231005)
TeamD@vca.law
Andreozzi + Foote
4503 North Front Street
Harrisburg, PA 17110
(t) (717) 525-9124 |(f) (717) 525-9143

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

*/s/ J. Alexander Marcinko*
J. Alexander Marcinko, Esq.

## CERTIFICATE OF SERVICE

The below individual with the firm of Andreozzi + Foote, hereby certifies that I served a copy

of the foregoing document(s) upon the individuals at the addresses and in the manner below.

Date: **01/23/2026**                                         */s/ Taras*