**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

C.K.,

    Plaintiff,

v.

WYNDHAM HOTELS & RESORTS, INC.
d/b/a SUPER 8 BY WYNDHAM, SUPER
8 WORLDWIDE, INC., AND MIRAJ III
LLC d/b/a SUPER 8 MOTEL,

    Defendants.

Case No. 3:25-cv-1162-JEP-PDB

**DEFENDANTS WYNDHAM HOTELS & RESORTS, INC. AND
SUPER 8 WORLDWIDE INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Wyndham Hotels & Resorts, Inc. ("WHR") (incorrectly named as "Wyndham Hotels and Resorts, Inc. d/b/a Super 8 by Wyndham") and Super 8 Worldwide, Inc. ("SWI") (collectively, the "Wyndham Defendants") file this Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 32) (the "Amended Complaint" or "Am. Compl.") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In support thereof, the Wyndham Defendants state as follows.

## I.  INTRODUCTION

Section 1595(a) of the Trafficking Victims Protection Reauthorization Act

1

("TVPRA") permits a trafficking victim to seek civil relief from criminal perpetrators ("perpetrator" liability) and any defendant who "knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in" trafficking crimes against the plaintiff ("beneficiary" or "participant" liability). 18 U.S.C. § 1595(a). In this case, Plaintiff seeks to hold the Wyndham Defendants liable for her alleged trafficking by unidentified traffickers between May and June 2017 at a franchised Super 8®-branded hotel located at 5018 University Boulevard W in Jacksonville, Florida (the "Facility"), which was independently owned and operated by a third-party franchisee, Defendant Miraj III LLC ("Miraj"). Ignoring the distinction between the owner/operator of the Facility and the parent company of the franchisor, Plaintiff asserts a single claim for participant liability against all Defendants.

The crux of the Amended Complaint is that the hospitality industry generally was aware that sex trafficking could occur at hotels, including franchised hotels, and because of this general awareness, the Wyndham Defendants should have prevented Plaintiff's alleged trafficking between May and June 2017. Plaintiff's theory, however, cannot be reconciled with Section 1595(a), which does not impose civil liability on a hotel franchisor defendant for failing to prevent trafficking. A Section 1595(a) claim requires a plausible allegation that the defendant participated in a venture that trafficked the plaintiff and that the defendant had actual or constructive knowledge of the plaintiff's trafficking. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021) (hereinafter "*Red Roof*").

The Amended Complaint fails to allege these elements. In particular, the Amended Complaint fails to allege facts plausibly suggesting the Wyndham Defendants participated in any venture that they knew or should have known was engaged in trafficking Plaintiff. Rather, Plaintiff alleges that the Wyndham Defendants failed to identify and prevent sex trafficking and benefitted from its alleged occurrence. The Amended Complaint also fails to plausibly allege that the Wyndham Defendants knew of, interacted with, or had any connection with Plaintiff or her alleged traffickers or that the Wyndham Defendants had any reason to believe that, by entering into a franchise relationship with Miraj, they knew or should have known they were benefiting from Plaintiff's alleged trafficking. Accordingly, Plaintiff's TVPRA claim against the Wyndham Defendants should be dismissed.

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff acknowledges that the Facility was owned, operated, controlled, managed, and supervised by Miraj, which "acted as a Franchisee and not a Franchisor for the subject aforesaid premises." Am. Compl. ¶¶ 15-16. Plaintiff further alleges that, at unspecified times between May and June 2017, she was trafficked at the Facility by unidentified traffickers, and her trafficking should have been apparent to hotel staff because Plaintiff encountered a hotel employee, ran to the lobby screaming in an attempt to seek help and ultimately left the hotel and "escape[d]" her traffickers. *See id.* ¶¶ 19-38. According to the Amended Complaint, the franchisee's staff failed to help the Plaintiff and failed to recognize purported "red flags" or "signs" of trafficking, such as foot traffic to rooms, male visitors at unusual hours, Plaintiff's appearance and

3

demeanor, and suspicious items (such as cash, drugs, condoms, lubricants, etc.) in rooms that should have been visible to the franchisee's (*i.e.*, Miraj) housekeeping staff. *Id.* ¶¶ 52, 81-82.

Importantly with respect to a TVPRA claim, Plaintiff does not allege that WHR, currently the ultimate parent company of SWI (the franchisor of the Super 8® brand) or anyone affiliated with or employed by the Wyndham Defendants knew of or interacted with Plaintiff or her alleged traffickers such that they participated in or should have known about her alleged trafficking. The Amended Complaint relies on these conclusory allegations to suggest that the Wyndham Defendants had "constructive and actual knowledge that the undertaking or enterprise violated the TVPRA" (*id.* ¶ 80), did not implement anti-trafficking policies and procedures (*id.* ¶¶ 51, 53, 86), and had "passive or active involvement and affirmative[ly] enabl[ed]" Plaintiff's alleged trafficking (*id.* ¶¶ 50, 55, 85). Plaintiff argues that implementing such policies would have prevented her alleged trafficking at the Facility. *Id.* ¶ 53. As set forth below, Plaintiff's generalized allegations in the Amended Complaint fail to meet the TVPRA's requirements. Accordingly, the Amended Complaint should be dismissed.

## III.   LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Fid. Nat'l Fin., Inc. v. Attachmate Corp.*, No. 3:15-cv-01400, 2017 WL 3726687, at *1 (M.D. Fla. Mar. 1, 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Courts are not required to accept as true a legal conclusion couched as a factual allegation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint that provides labels and conclusions or a formulaic recitation of the elements of a cause of action is not adequate to survive a Rule 12(b)(6) motion to dismiss." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotations and citations omitted). "A facially plausible claim must allege facts that are more than merely possible." *Id.* (citing *Iqbal*, 556 U.S. at 678). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). Moreover, a court need not credit allegations made on "information and belief" when deciding a motion to dismiss. *See, e.g.*, *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (explaining that courts need not accept allegations made "upon information and belief" when deciding motions to dismiss, as they fail to meet Rule 8's plausibility standard).

## IV.   ARGUMENTS AND AUTHORITIES

### A.   The Amended Complaint Is An Impermissible Shotgun Pleading.

As a threshold matter, the Amended Complaint impermissibly resorts to shotgun pleading tactics, which are "flatly forbidden" by the Federal Rules of Civil Procedure. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (internal quotations omitted); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) ("Courts in the Eleventh Circuit have little tolerance for shotgun pleadings."). In particular, the Amended Complaint lumps Defendants together and

attributes allegations to them indiscriminately. *See, e.g.*, *Joseph v. Bernstein*, 612 F. App'x 551, 553 (11th Cir. 2015) ("[T]he complaint failed to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure because it indiscriminately grouped all Defendants together without explaining the factual basis for each of the Defendants' liability."). The Amended Complaint relies on allegations against the Wyndham Defendants and Miraj jointly. *See, e.g.*, *id.* ¶¶ 39-40, 49, 65. The Complaint also relies on generalizations about the hotel industry. *See, e.g.*, *id.* ¶¶ 41-45; *see also J.R. v. Extended Stay Am., Inc., et. al*, No. 3:23-cv-63, 2023 WL 11938961, at *3 (M.D. Fla. Nov. 8, 2023) (dismissing complaint based on allegations against the defendants generally and generalizations about the hotel industry, which "are legally distinct claims, involving legally distinct analyses, yet Plaintiff has grouped them into a single count").

Plaintiff's reliance on group allegations, particularly given the absence of any specific allegations directed to the Wyndham Defendants, deprives the Wyndham Defendants of the fair notice to which they are entitled under Rule 8, and the Amended Complaint should be dismissed on this basis. *See, e.g.*, *J.R.*, 2023 WL 11938961 at *3 (dismissing complaint as an impermissible shotgun pleading as the complaint consisted of group pleading and generalizations about the hotel industry); *A.D. v. Cavalier Mergersub LP*, No. 2:22-cv-649-JES-NPM, 2023 WL 2021673, at *2 (M.D. Fla. Feb. 15, 2023) (dismissing complaint for improper group pleading because the "Court [and defendants] cannot determine, without pure speculation, what actionable conduct each Defendant engaged in, if any, under the TVPRA").

**B.   The Amended Complaint Fails To State A Claim Under Section 1595(a).**

Regardless of its improper reliance on generalized pleading, the Amended Complaint against the Wyndham Defendants should be dismissed because it lacks well-pleaded allegations sufficient to state a claim of "participant" or "beneficiary" liability under the TVPRA. The TVPRA is a criminal statute which creates a civil right of action for victims of sex trafficking. 18 U.S.C. §§ 1591, 1595(a). Section 1595(a) of the TVPRA provides as follows:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). As the Eleventh Circuit Court of Appeals established in *Red Roof*, 21 F.4th at 726, and reiterated in *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024), a "beneficiary" or "participant" claim under the TVPRA requires plausible allegations that the defendant "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff."[1] 2024 WL 505063, at *2 (citing *Red Roof*, 21

---

[1] Although the Wyndham Defendants are not challenging the sufficiency of the Amended Complaint insofar as it relates to every element of the TVPRA, they do not

7

F.4th at 726). The Amended Complaint, however, does not contain well-pleaded allegations that the Wyndham Defendants participated in any "venture" or "common undertaking" that committed trafficking crimes against Plaintiff or that the Wyndham Defendants "knew or should have known" that the venture was engaged in trafficking her.

### 1. The Amended Complaint Does Not Allege that the Wyndham Defendants Participated in a TVPRA Venture.

Plaintiff argues that the Wyndham Defendants "participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant(s), knew or should have known were involved in sex-trafficking" and took part in a "common undertaking or enterprise involving risk and potential profit with Plaintiff's traffickers." ECF No. 32 ¶¶ 70, 72. Participation, however, requires more than franchising a hotel. "[T]he 'ordinary meaning of participate or participation is to take part in or share with others in common or in an association.'" *A.L. v. G6 Hosp. Prop. LLC*, No. 25-80056-CV, 2025 WL 1151750, at *2 (S.D. Fla. Apr. 18, 2025) (citing *Red Roof*, 21 F.4th at 725). Consistent with its ordinary usage, "venture" is defined in the TVPRA as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6); *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (a "venture" only exists where "two or more individuals" are "associated in fact"). Put differently, a "venture" is "an undertaking or enterprise involving risk and

concede that Plaintiff's allegations, even taken as true, satisfy any of the elements of the TVPRA.

potential profit." *Red Roof*, 21 F.4th at 724.

Under the TVPRA, the "venture" in which the defendant participates must actually commit trafficking crimes against the plaintiff. *See H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) (the "particular venture in which the defendant allegedly participated" must commit "sex trafficking" crimes against the plaintiff). To plausibly allege a hotel operator participated in a TVPRA venture, a plaintiff must "at least" plausibly allege "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a *tacit agreement*." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) (emphasis added); *see A.D. v. Best W. Int'l, Inc.*, No. 2:22-cv-651, 2023 WL 5510064, at *4 (M.D. Fla. Aug. 25, 2023) ("Plaintiff must allege facts from which the Court could reasonably infer the hotels could be said to have a tacit agreement with the trafficker" and dismissing complaint where plaintiff "does not sufficiently plead that [defendant] participated in a sex trafficking venture beyond participation in shared revenue as part of its normal role as a franchisor"); *see also Doe (T.R.S.) v. Wyndham Hotels & Resorts, Inc.*, No. 2:23-cv-01676, 2024 WL 3088722, at *7 (E.D. Cal. June 20, 2024) (dismissing complaint where plaintiff failed to allege that WHR had a tacit agreement with plaintiff's traffickers to traffic plaintiff); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 431 (N.D. Tex. 2021) (granting WHR's motion to dismiss where complaint did not state "whether [plaintiff] interacted with the same hotel staff during each stay").

For example, the Seventh Circuit found such a continuous relationship between

Salesforce and now-defunct Backpage. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 560 (7th Cir. 2023). "In short, Salesforce facilitated the growth of Backpage's business, a business that was almost exclusively a sex-trafficking business and . . . whose business model was built upon systematic and widespread violations of Section 1591." *Id.* at 560-61. But the fact that a defendant provides "common products or services," such as a hotel room rental, which is then misused in connection with someone's trafficking, is not enough to suggest the defendant participated in a TVPRA venture. *Id.* at 562 (recognizing "participation in a venture" requires more than providing "common products or services" that happen to be used by a trafficker). The rental of a hotel room does not, by itself, create a "venture" or "common undertaking" between the hotel operator and the hotel guest. *See, e.g., id.*; *Red Roof*, 21 F.4th at 726-27 (allegations of room rental transactions "may suggest that the franchisors financially benefitted from renting hotel rooms to [their] sex traffickers," but "do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA"); *A.L.*, 2025 WL 1151750 at *3 (dismissing TVPRA claim because allegations that defendant repeatedly rented rooms to plaintiff's trafficker was insufficient to plead a "venture" under the TVPRA); *Lawson v. Rubin*, No. 17-CV-6404, 2018 WL 2012869, at *13-14 (E.D.N.Y. Apr. 29, 2018) (dismissing TVPRA claim against condominium owner because leasing a unit to someone who committed trafficking crimes in the unit was not sufficient).

Courts have specifically recognized that TVPRA claims against hotel brand franchisors and the parent companies of franchisors are different and implicate

additional considerations. *Red Roof*, 21 F.4th at 726-27. Asserting a claim against a hotel brand franchisor—let alone its corporate parent—as opposed to a hotel operator, is more difficult. *See G.G.*, 76 F.4th at 562 (noting hotel franchisors "were one step removed from the sex traffickers (*i.e.*, street-level trafficker → hotel → hotel franchisor)"). Franchisors (and their parent companies) do not own or manage franchised hotels; rather they license their brands and proprietary business formats to independent hotel owners and operators (*i.e.*, franchisees) pursuant to arms-length franchise agreements. *See Mobil Oil Corp. v. Bransford*, 648 So.2d 119 (Fla. 1995) ("[T]he mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions. Nor does the provision of routine contractual support services refute this conclusion."); *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 337 (Wis. 2004) ("[A] franchise is a commercial arrangement between two businesses which authorizes the franchisee to use the franchisor's intellectual property and brand identity, marketing experience, and operational method."); *Franchise*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The sole right granted by the owner of a trademark or tradename to engage in business or to sell a good or service in a certain area.").

Plaintiff does not plausibly allege that the Wyndham Defendants knew of her traffickers, let alone that the Wyndham Defendants interacted or participated in a venture with them. Instead, Plaintiff alleges that a "continuous business relationship" existed between the Facility and the Plaintiff's traffickers because the Wyndham

Defendants "repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises." ECF No. 32 ¶ 78. Plaintiff's allegations in the Amended Complaint do not plead a continuous relationship, common undertaking, or enterprise, and the Eleventh Circuit has rejected TVPRA claims rooted in similar allegations. *K.H.*, 2024 WL 505063, at *4 (quoting *Red Roof Inns*, 21 F.4th at 726); *see also M.A.*, 425 F. Supp. 3d at 970 (plaintiff must "at least" plausibly allege "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement"). Plaintiff does not allege that the Wyndham Defendants knew of Plaintiff's alleged traffickers, let alone that the Wyndham Defendants interacted or participated in a venture with her alleged traffickers. *See J.R.*, 2023 WL 11938961, at *4 (dismissing complaint because the factual allegations were conclusory and "state[d] no claim of Defendants' involvement with others involving a common undertaking of sex trafficking in the operation of hotels"). Plaintiff has pleaded no facts as to any interaction between the Wyndham Defendants and Plaintiff's alleged traffickers or otherwise connecting the actions of the Wyndham Defendants to Plaintiff's alleged traffickers. *Compare N.G. v. G6 Hosp. Prop. LLC*, No. 6:24-cv-2379, 2025 WL 1332210, at *2 (M.D. Fla. May 7, 2025) (dismissing complaint and noting that plaintiff's allegations may have shown that defendant's staff knew about plaintiff's status as a trafficking victim, but these allegations did not amount to the defendant participating in a venture) *with J.H. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1236 (N.D. Ga.

12

2022) (participation in a venture element was plausibly pled where operator was allegedly "closely involved with the daily management of the hotel" and "did far more than simply receive revenue and reviews mentioning sex work").

In *Ricchio v. McLean*, by comparison, Plaintiff pleaded a "venture" between her trafficker and the live-in husband-and-wife operators of the hotel where she was trafficked. 853 F.3d at 555. There, the plaintiff alleged that her trafficker "had prior commercial dealings with [the operators], which the parties wished to reinstate for profit" and that they "enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which [the trafficker's] coercive and abusive treatment of [the plaintiff] as a sex slave had become apparent to the [operators]."*Id.* Plaintiff alleges no level of cooperation or coordination between the Wyndham Defendants and her traffickers in this case.

Plaintiff claims that the venture in which the Wyndham Defendants participated was a hotel-operating venture (ECF No. 32 ¶ 70), that the Wyndham Defendants financially benefitted through the rental of rooms to Plaintiff's traffickers (*Id.* ¶ 67), and that the Wyndham Defendants had prior commercial dealings with Plaintiff's traffickers through the repeated rentals of the hotel rooms (*Id.* ¶ 78). However, Plaintiff fails to allege any sort of agreement or understanding between the Wyndham Defendants and her traffickers and such allegations do not establish the existence of a venture. *A.L.*, 2025 WL 1151750, at *4 ("Plaintiff's allegation that Defendant had 'prior commercial dealings' with the trafficker is based solely on its

13

renting rooms to the trafficker—a fact the Eleventh Circuit has specifically stated does *not* establish the existence of a venture or business relationship.") (emphasis in original). As the Eleventh Circuit established in *K.H. v. Riti, Inc.*, allegations of financial benefit from renting hotel rooms to the trafficker and observing signs of sex trafficking at the hotel were insufficient to establish the hotel operator participated in a sex trafficking venture. 2024 WL 505063, at *2-3;[2] *N.G. v. G6 Hosp. Prop. LLC*, No. 6:24-cv-2379, 2025 WL 2676101, at *2 (M.D. Fla. Sept. 18, 2025) (same); *A.L.*, 2025 WL 1151750, at *4 (same).

The TVPRA also requires Plaintiff to allege that Defendants "*participat[ed]* in a venture" engaged in sex trafficking. *See* 18 U.S.C. § 1595(a) (emphasis added). Participation requires more than just passive facilitation, but some level of active

---

[2] In *K.H. v. Riti, Inc.*, the plaintiff alleged that the defendant owner and manager of the subject hotel had continuous commercial dealings with her traffickers over several years on numerous occasions for multi-night stays. 2024 WL 505063, at *1-2. Plaintiff claimed constructive knowledge of trafficking because hotel staff were familiar with the traffickers, observed plaintiff's malnourished condition, housekeeping was denied access to plaintiff's room after requests for additional linens were made, and four separate incidents of police responses to reports of sex trafficking occurred at the subject hotel. *Id.* at *1, n.3. The Eleventh Circuit affirmed dismissal of the TVPRA claim, reasoning that allegations that a defendant financially benefitted from renting hotel rooms to alleged traffickers and observed signs of sex trafficking were insufficient to establish the defendant participated in a sex trafficking venture. *Id.* at *4. The Court reiterated that the kind of allegations made in *Ricchio v. McLean* would support that the hotel operator and traffickers were working together, and that the hotel operator participated in a sex trafficking venture. *Id.* at *3-4; *see also Red Roof*, 21 F.4th at 726-27 ("allegations may suggest that the franchisors financially benefitted" from the rental of hotel rooms to the alleged traffickers, but they do not "suggest that the franchisors participated in an alleged common undertaking or enterprise" with the traffickers); *Ricchio*, 853 F.3d at 555 (plaintiff alleged that the hotel owner had "prior commercial dealings" with the traffickers, which they wished to reinstate, and that while plaintiff was being held at the hotel against her will, the hotel owner "exchang[ed] high-fives" with the traffickers "while speaking about 'getting this thing going again'").

engagement in the trafficking. *K.H.*, 2024 WL 505063, at *3 ("[O]bserving something is not the same as participating in it.") (quoting *Red Roof*, 21 F.4th at 727); *Taylor v. CPLG FL Props. LLC*, No: 2:24-cv-429-JES-NPM, 2024 WL 4825814, at *5 (M.D. Fla. Nov. 19, 2024) (allegations that defendant failed to implement anti-sex-trafficking policies and procedures or failed to intervene to prevent the alleged victim from being trafficked do not sufficiently plead participation in a sex trafficking venture). Plaintiff primarily faults the Wyndham Defendants for failing to prevent her alleged trafficking, despite unidentified staff of the hotel operator witnessing several "red flags" of sex trafficking and failing to help her when she tried to escape. ECF No. 32 ¶¶ 33-36, 81. Plaintiff's allegations lack any specificity in connection with her alleged trafficking, such as which franchisee employees saw the guests entering the hotel or any room or when they observed such activity. *Cf. Ricchio*, 853 F.3d at 555 (affirming denial of motion to dismiss where plaintiff pled that the hotel owner "visit[ed] the rented quarters to demand further payment" and where "in plain daylight view of the front office of the motel, either of the [hotel owners] on duty there would have seen [the trafficker] grab [plaintiff], kick her, and force her back toward the rented quarters when she had tried to escape").

Moreover, the TVPRA does not create a duty to prevent trafficking. *A.D. v. Best W. Int'l, Inc.*, No. 2:22-cv-650, 2023 WL 2955711, at *7 (M.D. Fla. Apr. 14, 2023) (citing *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking.")). Alleged nonfeasance—the failure to prevent trafficking—is not

15

"participation" in a venture. *Red Roof*, 21 F.4th at 727 ("[O]bserving something is not the same as participating in it."). Indeed, each of Plaintiff's allegations against the Wyndham Defendants is rooted in nonfeasance. *See, e.g.*, ECF No. 32 ¶¶ 49, 51, 53, 86. Thus, the Amended Complaint does not plausibly plead "participation in a venture." *See, e.g.*, *N.G.*, 2025 WL 2676101, at *2; *A.D. v. Marriott Int'l, Inc.*, No. 2:22-CV-645, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023) ("The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture."); *C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-CV-1345, 2022 WL 467813, at *3-4 (N.D. Ga. Feb. 9, 2022) (hotel's failure to identify and prevent trafficking is not "participation in a venture" under the TVPRA).

Accordingly, because the Amended Complaint lacks well-pleaded allegations that the Wyndham Defendants participated in a venture that committed trafficking crimes, the Court should dismiss the Amended Complaint against the Wyndham Defendants.

### 2. The Amended Complaint Fails to Plausibly Allege that the Wyndham Defendants Knew or Should Have Known About Plaintiff's Alleged Trafficking.

Further, Plaintiff's TVPRA claim against the Wyndham Defendants should be dismissed because the Amended Complaint fails to adequately plead that the Wyndham Defendants "knew or should have known" the venture in which they participated committed sex trafficking crimes against Plaintiff. *See Red Roof*, 21 F.4th at 723; *M.A.*, 425 F. Supp. 3d at 964; *Doe v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464,

16

472-73 (E.D.N.C. 2024) (dismissing TVPRA claim because allegations amounted to constructive knowledge of prostitution, not sex trafficking by force or fraud); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 941 (D. Or. 2020) ("Although the complaint suggests the hotels had some level of notice that Plaintiff engaged in commercial sex acts, the vague allegations fail to show the hotels knew or should have known that Plaintiff was engaging in commercial sex as a result of fraud, force, or coercion."). Instead, Plaintiff relies on blanket allegations of general knowledge in the "hospitality industry" at large. Yet general knowledge about sex trafficking within the hotel industry or unrelated commercial sex activity at different hotels does not satisfy the "knew or should have known" requirement. *See, e.g.*, *Red Roof*, 21 F.4th at 725.

A "defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA *as to the plaintiff*." *Id.* (emphasis added); *see, e.g.*, *A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641, 2023 WL 2242507, at *3 (M.D. Fla. Feb. 27, 2023) (allegations of observing "red flags" and generic allegations referencing interactions with the traffickers with no supporting facts were insufficient to plead knowledge); *Doe (K.B.) v. G6 Hosp., LLC*, No. 1:23-CV-2597-TWT, 2023 WL 8650785, at *6 (N.D. Ga. Dec. 14, 2023) ("By including the phrase 'as to the plaintiff' . . . the Eleventh Circuit decided that a complaint must allege plaintiff-specific knowledge of the trafficking rather than mere general knowledge that trafficking is occurring. [*Red Roof*] is binding on this Court, and thus, [plaintiff's] claim against the G6 Defendants can only proceed if she sufficiently alleged facts showing that the G6 Defendants had

17

actual or constructive knowledge of [plaintiff's] trafficking."); *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-CV-00619, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) ("Plaintiff alleges that defendant was on notice about the prevalence of sex trafficking generally at its hotels and in the hotel industry. But this is not sufficient to show that defendant should have known about what happened to plaintiff.") (internal citations omitted). Plaintiff fails to plausibly allege that the Wyndham Defendants knew or should have known of the venture that is alleged to have trafficked her. Instead, Plaintiff alleges that the Wyndham Defendants should have known about the alleged sex trafficking based on allegations about trafficking in the hospitality industry generally. ECF No. 32 ¶¶ 41, 44.

Allegations of general knowledge that trafficking occurs at hotels is insufficient to establish that a hotel franchisor defendant knew or should have known about a specific plaintiff's trafficking, even at the motion to dismiss stage. *See, e.g.*, *Red Roof*, 21 F.4th at 725 ("[T]he defendant must have either actual or constructive knowledge that the *venture*—in which it voluntarily participated and from which it knowingly benefited—violated the *TVPRA as to the plaintiff*.") (emphasis added). To conclude that a defendant is liable under the TVPRA because they were generally aware that sex trafficking sometimes occurs in hotels "unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *G.G.*, 76 F.4th at 557 (quoting *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020)). If such allegations were sufficient:

> [T]he liability of franchisors—which are further removed from the sex

18

trafficking than the actual hotels are—would be much easier proven than the liability of the hotels themselves. This would make no sense. If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under that same statute for having only an abstract awareness of sex trafficking in general.

*S.J.*, 473 F. Supp. 3d at 154; *accord Doe (K.B.)*, 2023 WL 8650785 at *6 (allegations that defendants were aware of online reviews discussing trafficking or prostitution at the subject hotel, that defendant conducted regular inspections, and that illegal activity was done in plain view did not plausibly allege the knowledge requirement).

This holds true for owners or operators, as to whom the "plaintiff must show, at least, that a franchisee hotel [i.e., a hotel operator] was or should have been aware of *specific* sex trafficking conduct in order to violate [§ 1595(a) of] the TVPRA." *S.J.*, 473 F. Supp. 3d at 154 (emphasis added). In *S.J.*, the court observed that, regardless of whether a defendant is a hotel operator or a franchisor, "[t]he real issue is not, then, actual-versus-constructive knowledge but *whether a defendant satisfies the knowledge element as to a particular sex trafficking venture.*" *Id.* (emphasis added). "[K]nowledge or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA." *Id.* The plaintiff in *S.J.,* like here, did not plead facts to establish notice of her specific trafficking, and the Court thus dismissed the TVPRA claims. *Id.* The same result is warranted here as to the Wyndham Defendants.

Consistent with *Red Roof*, numerous courts have dismissed "beneficiary" claims against hotel brand franchisors for failing to allege facts suggesting that the franchisor

"knew or should have known" about the plaintiff's alleged trafficking. *See, e.g.*, *J.R.*, 2024 U.S. Dist. LEXIS 173424, at \*12; *A.D. v. Holistic Health Healing Inc.*, 2023 WL 2242507, at \*3; *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) ("Plaintiff alleges that Wyndham was on notice about the prevalence of sex trafficking generally at its hotels. But this is not sufficient to show that Wyndham should have known about what happened to this plaintiff.") (internal citation omitted); *A.B. v. Hilton*, 484 F. Supp. 3d at 938 (same); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656, 2020 WL 4368214, at \*6 (N.D. Cal. July 30, 2020) (same).

Moreover, alleged observations of "red flags" of trafficking are not enough to establish knowledge as to Plaintiff's trafficking. *See, e.g.*, *Red Roof*, 21 F.4th at 727 (finding no knowledge where plaintiff's "only allegations as to the franchisors' knowledge or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels"); *A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641, 2023 WL 2242507, at \*3 (allegations of observing red flags, as well as a "'personal relationship between various hotel staff and A.D.'s trafficker' and 'direct employee encounters with A.D. and her trafficker inside the Conty's Motel Naples'" were insufficient).

Plaintiff's conclusory allegation that the Wyndham Defendants "knew or should have known" about her trafficking because of the "critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking" are insufficient. ECF No. 32 at ¶ 47. Plaintiff

also alleges that the Wyndham Defendants "knew or should have known about the nature of the sex trafficking occurring at the" franchised Super 8®-branded Facility due to the many "red flags" existing at the Facility. *Id.* ¶ 81. Plaintiff further alleges that hotel staff (*i.e.*, staff of the franchisee Miraj) observed or were aware of these obvious "signs" of trafficking—many male visitors would visit Plaintiff's traffickers' hotel room; male visitors would visit at unusual hours and were present at the hotel for brief periods of time; and, Plaintiff's appearance, demeanor, movements throughout the hotel, and her interactions with her traffickers and hotel staff. *Id.* ¶¶ 81-82. However, the Complaint offers no plausible basis to suggest that the Wyndham Defendants (as opposed to Miraj's hotel staff) were or should have been on notice of Plaintiff's alleged sex trafficking at the Facility. Something more is needed but not alleged. *See, e.g.*, *J.R.*, 2024 U.S. Dist. LEXIS 173424, at *12 (complaint failed to allege that hotel franchisors "knew or should have known" about crimes committed by the sex trafficking "venture").; *A.D. v. Holistic Health Healing Inc.*, 2023 WL 2242507, at *3; *Doe (K.B.)*, 2023 WL 8650785, at *6 (same); *S.J.*, 473 F. Supp. 3d at 154 (same).

Plaintiff's conclusory allegations are insufficient to plausibly infer that the Wyndham Defendants knew or should have known of Plaintiff's alleged sex trafficking at the Facility.

## V.  CONCLUSION

For the reasons set forth herein, the Wyndham Defendants respectfully request that the Amended Complaint against them be dismissed.

Dated: February 23, 2026

**DLA PIPER LLP (US)**

*/s/ Janelly Crespo*
Janelly Crespo
Florida Bar No. 124073
200 South Biscayne Blvd., Ste 2500
Miami, Florida 33131-5341
janelly.crespo@us.dlapiper.com
Tel.: 305.423.8500
Fax: 305.437.8131

***Counsel for Defendants***
***Wyndham Hotels & Resorts, Inc. and***
***Super 8 Worldwide, Inc.***

22

## LOCAL RULE 3.01(g) CERTIFICATION

In accordance with Local Rule 3.01(g), counsel for Wyndham Hotels & Resorts, Inc. and Super 8 Worldwide, Inc., certifies they conferred with counsel for Plaintiff regarding the relief requested in this Motion and that Plaintiff opposes such relief.

*/s/ Janelly Crespo*
Janelly Crespo

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 23, 2026, I electronically filed the foregoing document via CM/ECF, which caused a true and correct copy to be served electronically upon all entitled parties.

*/s/ Janelly Crespo*
Janelly Crespo